UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
SAMUEL ACEVEDO MUNIZ,         :
                              :
          Petitioner,         :
                              :
     v.                       :
                              :   Civil Action No. 10-2444 (RBK)
DONNA ZICKEFOOSE,             :
                              :
          Respondent.         :
_____ :
                              :
SAMUEL ACEVEDO MUNIZ,         :
                              :   Civil Action No. 11-4200 (RBK)
          Petitioner,         :
                              :
     v.                       :
                              :   MEMORANDUM OPINION AND ORDER
                              :   APPLIES TO BOTH ACTIONS
DONNA ZICKEFOOSE,             :
                              :
          Respondent.         :
_____ :
```

This pair of matters, both of which ensued from the same pleading and involved a motion that followed it, have already enjoyed a substantial number of procedural twist and turns, and they now come before the Court upon Petitioner's additional motion, seeking reconsideration of this Court's prior determination, and it appearing that:

1.   On May 13, 2010, Petitioner, a federal prisoner confined at the F.C.I. Fort Dix, filed a § 2241 petition ("Petition"). See Docket Entry No. 1.  The Petition arrived together with Petitioner's duly executed in forma pauperis ("IFP") application.  See Muniz v. Zickefoose ("Muniz-I"), Civ.

Action. No. 10-2444 (RBK) (D.N.J.), Docket Entry No. 1-2.
In light of that IFP application, Petitioner was granted IFP
status for the purposes of his Muniz-I action.  The
allegations stated in the Petition challenged the
calculation of Petitioner's period of federal confinement.
See id. Docket Entry No. 1.  The allegations indicated that
Petitioner was seeking to shorten the term of his federal
confinement by the period from June 9, 1999 (the date of his
arrest) to July 11, 2001, which represented the time
Petitioner spent in state custody prior to commencement of
his federal confinement, and which period was, allegedly,
used by Petitioner's federal sentencing judge in order to
adjust Petitioner's sentence downward, pursuant to the U.S.
Sentencing Guidelines Manual § 5G1.3.[1]  See id.  The

---

[1]  Petitioner was convicted as a result of criminal
proceedings conducted in the United States District Court for the
District of Puerto Rico.  See USA v. Acevedo-Muniz et al., Crim.
Action No. 99-0307 (PG) (D.P.R.).  In that matter, Samuel
Acevedo-Muniz, Waldemar Burgos-Chaparro, Luis Moro-Hernandez,
Pablo Soto-La-Santa, Eduardo D. Rivera-Moreno, Samuel
Velazquez-Caraballo and Javier Acevedo-Gonzalez were charged with
a number of drug-related offenses.  See id.  The docket in that
matter indicates that Petitioner, charged under his hyphenated
form of last name, i.e., Acevedo-Muniz, was also known as "Sammy
Segueta" and "Sammy Big Boy."  See id.  As a result of these
proceedings Petitioner was sentenced to 240 months of
imprisonment.  See id.  Petitioner's § 2255 motion, his
"informative" motion, motion for reconsideration and appeal to
the United States Court of Appeals for the First Circuit were
denied.  See id.; see also Acevedo-Muniz v. USA, Civil Action No.
02-1136 (PG) (D.P.R.); USA v. Acevedo-Muniz et al., USCA No. 09-
1827 (1st Cir.).

Petition asserted that *this* line of challenges was duly exhausted administratively.  See id.  The Court, therefore, directed Respondent to answer the Petition.  See Docket Entry No. 2.

2.   Respondent moved for extension of time to answer since, at that point in time, the Bureau of Prisons ("BOP") was, apparently, already in the process of recalculating Petitioner's federal sentence by factoring in the downward adjustment ordered by his federal sentencing judge.  See id., Docket Entries Nos. 4, 5 and 6.  In other words, it was appearing that the BOP was about to grant Petitioner the very relief Petitioner was requesting in his Muniz-I matter. See id.

3.   On January 25, 2011, Respondent moved this Court for dismissal of this matter as moot on the grounds that Petitioner's federal sentence was, in fact, recalculated by the BOP in accordance with the downward adjustment ordered by Petitioner's federal sentencing judge.  See id., Docket Entry No. 6.  After examining the documents attached to Respondent's motion, the Court found Respondent's position well-merited and, correspondingly, dismissed the Petition as moot; the Court's prior order (directing Respondent's filing of an answer) was, accordingly, vacated as superfluous.  See id., Docket Entries Nos. 7 and 8.  That development took

place on January 25, 2011, and Petitioner's <u>Muniz-I</u> action was terminated shortly thereafter. <u>See id.</u>

4. On February 9, 2011, Petitioner filed, in his <u>Muniz-I</u>, a new submission; it was titled "Informative Motion & Request for Determination" ("Motion-I"). <u>See id.</u>, Docket Entry No. 9. In his Motion-I, Petitioner asserted that, although he had his federal period of confinement recalculated to a shorter term (which reflected the downward adjustment ordered by his federal sentencing judge pursuant to § 5G1.3), Petitioner now wished to seek another recalculation. <u>See id.</u> Specifically, Petitioner wished: (a) to retain the larger amount of good-conduct-time ("GCT") credits that were applicable to his federal sentence before it was recalculated to a shorter term; and (b) to have this larger amount of CGT credits applied to Petitioner's now-shorter, recalculated, sentence (which entitled Petitioner to a smaller amount of GCT credits corresponding to that new, shorter period).[2] <u>See id.</u> <u>See id.</u> Respondent filed an opposition to Petitioner's Motion-I arguing that this **new** line of Petitioner's challenges (asserting that he was

---

[2]   In other words, once the BOP recalculated Petitioner's federal period of confinement down to a shorter term (to reflect the wishes of Petitioner's federal sentencing judge), the BOP correspondingly recalculated the good-conduct-time ("GCT") credits available to Petitioner to match this, now shortened, term of imprisonment.  Petitioner, however, wished to apply the old, larger amount of GCT credits to his shortened confinement.

entitled to keep his old amount of GCT credits applicable to his old longer federal sentence, while serving the now-recalculated shorter federal sentence) was wholly unexhausted. <u>See</u> <u>id.</u>, Docket Entry No. 10. In addition, Respondent noted, in passing, that a number of federal courts found this type of GCT challenges without merit. <u>See</u> <u>id.</u> Petitioner traversed to Respondent's opposition. <u>See</u> Docket Entry No. 11.[3] In addition, Petitioner's traverse indicated his position that: (a) his newly-minted GCT challenges should be deemed duly exhausted because Petitioner believes that these challenges were "somewhat implied" in his administrative applications requesting recalculation of his period of federal prison term in accordance with the downward adjustment ordered by his federal sentencing judge;[4] and (b) his newly-minted GCT

---

[3] Basically, Petitioner argued that, since his federal judge downward adjusted his sentence by reducing it by the time Petitioner's spent in state custody prior to commencement of Petitioner's federal sentence, Petitioner's federal confinement should have been deemed beginning, retroactively, at the time when that state custody period began to run and, thus, the GCT credits should be calculated on the basis of both Petitioner's period of federal confinement *and* his period of pre-federal state custody that was used for the purposes of downward adjustment by his federal sentencing judge under § 5G1.3.

[4] The response Petitioner obtained from the Central Office of the BOP indicates that Petitioner did not hint, even in the vaguest terms, the presence of any GCT challenges in his administrative grievances filed during his exhaustion of his claim that his federal sentence should be recalculated to reflect the downward adjustment ordered by the District of Puerto Rico.

challenges should be resolved in the <u>Muniz-I</u> action.   <u>See id.</u>

5.   This Court disagreed with Petitioner's position.   <u>See id.</u>, Docket Entry No. 13.   The Court's decision to that effect was lengthy and detailed, <u>see id.</u>, and another recital of the same appears unwarranted in this Memorandum Opinion and Order.   Therefore, it should suffice to state merely that the Court pointed out that:

   a.   Petitioner's newly-minted GCT challenges were based on a wholly different factual predicate than his original Petition, <u>see id.</u> at 11 (pointing out that "Petitioner's GCT challenges are qualitatively different from his initial claim and are based on the factual predicate distinct from the one alleged in the Petition (<u>i.e.</u>, the Motion asserts that, *after* the BOP adjusted Petitioner's period of federal confinement by factoring in the downgrading granted to Petitioner by his federal sentencing judge under § 5G1.3, the BOP unduly recalculated Petitioner's GCT credits down; in contrast, the Petition that gave rise to this matter was maintaining that the BOP was *refusing* to factor

_____

<u>See</u> <u>Muniz-I</u>, Docket Entry No. 1-1, at 10 (indicating that Petitioner raised <u>Barden</u> challenges before his warden and the Regional Office of the BOP and obliviously mentioned the issue of downward adjustment only during his appeal to the Central Office from the denial of <u>Barden</u> credit by the BOP Regional Office).

into Petitioner's period of federal confinement the

downgrading granted to Petitioner by his federal

sentencing judge under § 5G1.3)") (emphasis in

original);

b.  Procedurally, Petitioner could not raise his newly-

minted GCT challenges in <u>Muniz-I</u> by stating these new

challenges in his Motion-I or in his traverse, <u>see</u> <u>id.</u>

at 11-12;

c.  Petitioner's newly-minted GCT challenges were subject

to dismissal, without prejudice, as unexhausted.[5]  <u>See</u>

<u>id.</u> at 5-11.

6.  Therefore, the Court directed the Clerk to open a new civil

matter for Petitioner, <u>Muniz v. Zickefoose</u> ("Muniz-II"),

Civil Action No. 11-4200 (RBK).  The Court directed the

Clerk to file Petitioner's Motion-I in <u>Muniz-II</u>, qualifying

it as Petitioner's new pleading asserting his newly-minted

GCT challenges.  <u>See</u> <u>Muniz-II</u>, Docket Entries Nos. 1 and 2.

---

[5]  In connection with the finding, this Court painstakingly
detailed to Petitioner the rationale underlying the exhaustion
requirement and, in addition, pointed out that enforcement of
exhaustion requirement appears particularly fitting in regard to
Petitioner's newly-minted GCT challenges, since: (i) there have
been no decision as to this issue by the Court of Appeals for the
Third Circuit; (ii) other federal courts that addressed this
issue disagreed as to the outcome, with some courts finding this
type of challenges without merit, while other courts found them
meriting habeas relief; (iii) the BOP could follow either line of
these judicial determinations; and, in any event, (iv) the BOP
should have been allowed to resolve Petitioner's newly-minted GCT
challenges administratively.

In light of this Court's grant of IFP status to Petitioner for the purposes of Muniz-I, Petitioner's IFP status was continued to Muniz-II and no collection of filing fee was ordered. See id., Docket Entry No. 2. In addition, out of abundance of caution, the Court informed Petitioner that, if Petitioner did actually exhaust his GCT challenges before all three levels of the BOP, Petitioner should notify this Court accordingly, and -- if so notified -- the Court would: (a) direct the Clerk to reopen Muniz-II; (b) order Respondent to answer this new line of Petitioner's challenges; and (c) resolve Petitioner's newly-minted GCT-credit-based challenges on merits. See id.

7. In response, Petitioner filed, first, his: (a) appeal as to Muniz-I and Muniz-II; and, then, (b) Petitioner's motion for reconsideration ("Motion-II") currently before this Court. See, e.g., Muniz-II, Docket Entries Nos. 5-8.[6] In his Motion-II, Petitioner verified that his newly-minted GCT challenges were wholly unexhausted; however, he asserted that the exhaustion requirement should not be enforced because:

   a. Petitioner was of opinion that the exhaustion would be futile simply because Respondent's counsel cited a line

---

[6] Petitioner notice of appeal preceded his Motion-II by two and a half weeks. See Muniz-II, Docket Entries No. 5-9.

of out-of-the-Circuit cases where the courts found this type of challenges without merit, and Petitioner believed that the BOP was more likely to follow this line of cases rather than the line of cases favorable to Petitioner, see Muniz-II, Docket Entry No. 8, at 4; and

b.  Petitioner was of opinion that requiring him to exhaust his newly-minted GCT challenges administratively would be unjust, since:

i.   Petitioner believed that the BOP outright refuses to comply with all judicial decisions, see id. at 4-5;

ii.  Petitioner felt that the possibility that he would be charged postage (i.e., that he might pay for stamps) in connection with his submission of administrative appeals was unjust and, therefore, warrants excuse from the exhaustion requirement, see id. at 5;

iii. Petitioner might experience problems executing his administrative submissions.  In connection with this assertion, Petitioner suddenly declared that he "cannot understand, read, write or speak English."  Id. at 5.

9

8.  At the outset of its discussion of Petitioner's latest assertions, the Court note that, under Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985), "the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal."  Therefore, technically, this Court is without jurisdiction to address Petitioner's challenges raised in his Motion-II until the Court of Appeals stays Petitioner's appellate proceedings and remands Petitioner's claims to this Court for disposition of his Motion-II.  However, recognizing Petitioner's interests in a speedy resolution of his challenges (especially in light of Petitioner's obligation to raise his newly-minted GCT challenges to the BOP, which might take time), as well as being mindful of the Court of Appeals' interest in processing appellate cases in an expedited fashion, the Court finds that the interests of judicial economy warrant this Court's entry of its decision as to Petitioner's Motion-II.  The Court, therefore, will grant Petitioner's request to the extent that it would

address the merits of Petitioner's Motion-II instead of dismissing it for lack of jurisdiction.[7]

9.   A motion for reconsideration is a device of limited utility. There are only four grounds upon which a motion for reconsideration might be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice;[8] and (d) to accord the decision to an intervening change in prevailing

---

[7]   The Court of Appeals guided that a litigant's motion for reconsideration should be deemed "granted" when the court (the decision of which the litigant is seeking a reconsideration of) addresses the merits — rather than the mere procedural propriety or lack thereof- of that motion.  See Pena-Ruiz v. Solorzano, 281 Fed. App'x 110 at *2-3, n.1 (3d Cir. 2008). However, the very fact of the court's review does not prevent the court performing such reconsideration analysis (of the original application, as supplanted by the points raised in the motion for reconsideration) from reaching a disposition identical — either in its rationale or in its outcome, or in both regards — to the court's decision previously reached upon examination of the original application.  See id.

[8]   In the context of a motion to reconsider, the term "manifest injustice" "[generally . . . means that the Court overlooked some dispositive factual or legal matter that was presented to it," In re Rose, 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007), making the definition an overlap with the prime basis for reconsideration articulated in Harsco, that is, the need "to correct manifest errors of law or fact upon which the judgment was based."  Alternatively, the term "manifest injustice" could be defined as "'an error in the trial court that is direct, obvious, and observable.'"  Tenn. Prot. & Advocacy, Inc. v. Wells, 371 F.3d 342, 348 (6th Cir. 2004) (quoting Black's Law Dictionary 974 (7th ed. 1999)).  "[M]ost cases [therefore,] use the term 'manifest injustice' to describe the result of a plain error."  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1425 (5th Cir. 1996).

law.  See 11 Charles A. Wright, Arthur R. Miller & Mary Kay
Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995);
see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d
Cir. 1985), cert. denied, 476 U.S. 1171 (1986) (purpose of
motion for reconsideration is to correct manifest errors of
law or fact or to present newly discovered evidence).  "To
support reargument, a moving party must show that
dispositive factual matters or controlling decisions of law
were overlooked by the court in reaching its prior
decision."  Assisted Living Associates of Moorestown,
L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J.
1998).  In contrast, mere disagreement with the district
court's decision is an inappropriate ground for a motion for
reconsideration: such disagreement should be raised through
the appellate process.  See id. (citing Bermingham v. Sony
Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J.
1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan,
748 F. Supp. 274, 275 (D.N.J. 1990)); see also Drysdale v.
Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion
for reconsideration may not be used as a means to reargue
unsuccessful theories).  Consequently, "[t]he Court will
only entertain such a motion where the overlooked matters,
if considered by the Court, might reasonably have resulted
in a different conclusion."  Assisted Living, 996 F. Supp.

at 442; see also Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) ("[M]otions for reconsideration should be granted sparingly"); Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (a district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)").

10. Even a cursory review of Petitioner's assertions in support of his Motion-II indicate that reconsideration of this Court's prior decision is unwarranted.  Indeed, Petitioner's Motion-II verifies that: (a) the Court did not commit any errors of law or fact upon which it based its judgment; (b) Petitioner offers this Court no newly-discovered or previously unavailable evidence; (c) while Petitioner numerously tossed the term "unjust," he made no assertion indicating that this Court committed *any* error, moreover, plain error; and (d) he did not suggest that there was an intervening change in prevailing law, and this Court, on its own, is aware of no such change.  For these reasons, Petitioner's Motion-II does not warrant reconsideration of the Court's prior decision.

11. However, this Court's discussion would be incomplete without at least a brief review of the bases asserted by Petitioner in support of his Motion-II.  The Court, therefore, addresses these bases seriatim.

13

a.   It is axiomatic that Habeas Rule 2(e) requires separate petitions to challenge separate determinations.  See 28 U.S.C. § 2254 Rule 2(e), applicable to § 2241 cases through Rule 1(b).  Here, Petitioner's original Petition challenged the BOP's decision to calculate Petitioner's sentence without factoring in the downward adjustment ordered by Petitioner's federal sentencing judge.  *That* determination was exhausted administratively; it was addressed in Muniz-I and became moot when the BOP recalculated Petitioner's sentence to a shorter term, by factoring the aforesaid downward adjustment.  In contrast, when Petitioner, after having his federal sentence shortened, learned of the BOP's decision to recalculated the amount of Petitioner's available GCT credits to correspond to the shorter sentence Petitioner would be serving in light of having the downward adjustment factored in, that decision gave rise to a wholly different determination which, under Habeas Rule 2(e), had to be raised by means of a different Petition after being duly exhausted administratively.  Petitioner cannot "import" the exhaustion of claims underlying his Muniz-I action into his Muniz-II action.  Had it been otherwise, a federal inmate who exhausted his administrative

14

remedies with regard to a single challenge, would then
have a carte blanch to raise any and all later
challenges without administrative exhaustion.  Such
rule would make a mockery of the exhaustion requirement
and cannot be allowed.

b.   Petitioner's assertion that exhaustion of his newly-
minted GCT challenges would be necessarily futile
(simply because the brief executed by the Assistant
United States Attorney ("AUSA") in the opposition to
Petitioner's Motion-I included a string of citations to
cases where the courts came to the conclusion
unfavorable to Petitioner's newly-minted cause) fails
to assert a valid basis to trigger the futility
exception.  Indeed, the warden, the counsel
representing the BOP at the Regional level and the
counsel at the Central Office of the BOP may, very
well, elect to follow not the line of cases cited by
the AUSA but the competing line of cases: no statement
made by the AUSA in his brief binds the BOP.  The
futility exception is qualitatively different and
narrow.  See Lyons v. U.S. Marshals, 840 F.2d 202, 205
(3d Cir. 1988) (exhaustion may be excused where it
"would be futile, if the actions of the agency clearly
and unambiguously violate statutory or constitutional

rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"). Here, the Court has no basis to conclude that the BOP clearly and unambiguously violated a statutory or constitutional right, or that its administrative procedure is clearly inadequate to prevent irreparable harm to Petitioner.  Therefore, Petitioner's self-serving assertions that his exhaustion efforts would necessarily be futile cannot merit reconsideration of this Court's prior decision.

c.   Petitioner's self-serving speculative claims stitched to the word "unjust" fare even worse.  For instance, if Petitioner believes, baselessly, that the BOP refuses compliance with any and all judicial decisions, the rationale of Petitioner's application to this Court is unclear, since -- according to Petitioner's logic -- the BOP would not comply with this Court's decision anyway, even if the Court were to find in favor of Petitioner.  Since Petitioner's speculation is as illogical as it is baseless, it cannot provide this Court with a valid reason for reconsideration.[9]

---

[9]   Petitioner's elaboration on this peculiar point suggests that Petitioner made this odd deducements in light of the BOP's original denial of his administrative grievances: to that end, Petitioner maintains that the downward adjustment ordered by his federal sentencing judge came to fruition (in terms of having his

d.   Petitioner's claim that administrative exhaustion would

be prohibitively expensive because Petitioner would be

required to pay for stamps in the event he elects to

appeal an unfavorable decision of his warden to the

Regional Office and/or appeal the same to the Central

Office, is both speculative[10] and without merit.[11]  See

Payne v. Miner, 2011 U.S. Dist. LEXIS 91418, at *5

(E.D.N.C. Aug. 14, 2011) (where petitioner's mail was

---

federal sentence recalculated) only when Petitioner's challenges
were brought to the AUSA's attention by this Court's order to
answer.  However, Petitioner omits to notice that his own
administrative grievances filed with his warden and the Regional
Office of the BOP raised only Barden challenges, i.e., the claims
having nothing in common with the concept of downward adjustment,
and the issue of downward adjustment was just vaguely "hinted at"
in Petitioner's appeal to the Central Office.  Simply put,
Petitioner's downward adjustment claims were raised, in full,
only in the Petition filed in Muniz-I which, in turn, was brought
to the BOP's attention by the AUSA.  Therefore, it is hardly
surprising that the BOP did not address those claims in a
speedier fashion.

   [10]  See 28 U.S.C. §2241(c)(3) (the language of § 2241 is set
forth in present rather than in future terms, i.e., it reads:
"The writ of habeas corpus shall not extend to a prisoner unless
. . . he is [rather than will be] in custody in violation of the
Constitution or the laws or treaties of the United States")
(emphasis supplied); see also Phifer v. Clark, 115 F.3d 496, 1997
U.S. App. LEXIS 13007 (7th Cir. 1997) (dismissing the petition
where the petitioner's "suggested adverse consequences [are]
speculative.  Each depends upon possible discretionary actions
that may or may not affect future . . . decisions").

   [11]  "[P]ursuant to BOP Policy Statement No. 5265.5,
prisoners [are] permitted to purchase necessary postage from the
[the facility's] commissary.  . . . [A]n inmate with insufficient
funds for postage in his commissary account [is] provided with
stamps for legal mail at government expense." O'Rourke v. Smith,
1983 U.S. Dist. LEXIS 13496, at *83 (S.D.N.Y. Sept. 23, 1983).

returned for not having enough postage, his claims were deemed unexhausted, and the insufficient postage did not qualify as a valid excuse for failure to exhaust) (relying on <u>Beckford v. Martinez</u>, 408 Fed. App'x 518, 520 (3rd Cir. 2010)); <u>see</u> <u>also</u> <u>Jones v. Daniels</u>, 2010 U.S. Dist. LEXIS 54180 (E.D. Ky. June 2, 2010) (providing a detailed and thoughtful discussion upholding the constitutionality of BOP mailing and postage-collection system).  Indeed, had the expense of mailing operated as a valid excuse from the exhaustion requirement, the requirement would be wholly vitiated.

e. Finally, Petitioner's assertion (that he does not write, read, speak or understand English and, thus, cannot execute administrative grievances without an assistant), made a year and a half after commencement of <u>Muniz-I</u>, provides no support to his Motion-II.  Even if this Court were to presume that Petitioner's assertion about his absolute lack of comprehension of English is true (which presumption requires a stretch of imagination in light of the numerous and lengthy English-language submissions made by Petitioner in <u>Muniz-I</u> and <u>Muniz-II</u>), an inmate's problems with English language do not qualify the inmate for excuse

from the exhaustion requirement.[12]  See Bastista v. U.S. Dep't of Justice, 129 Fed. App'x 724 (3d Cir. 2005) (finding that prisoner's inability to speak English did not constitute cause for excusing his procedural default); Bonilla v. Hurley, 370 F. 3d 494, 498 (6th Cir. 2004) (prisoner's lack of familiarity with English language did not establish cause for procedural default).  Indeed, had it been otherwise, the exhaustion requirement would be constitutionally infirm, being applied solely to English-speaking inmates.[13]

_____

[12]  The Court notes its concern with Petitioner's averment that he does not read, speak, write or understands English.  As the record in Petitioner's criminal proceedings indicates, Petitioner was known as "Sammy Big Boy," which is an English term, and no entry in his two-year-long criminal proceedings, his § 2255 proceedings, etc. indicates Petitioner's resort to an interpreter or translator.  Moreover, the decision entered on August 26, 2010, by the United States Court of Appeals for the First Circuit, which dismissed Petitioner's Booker argument, read, in pertinent part, as follows: "Appellant Samuel Acevedo-Muniz has filed a pro se supplemental brief and motion seeking counsel's withdrawal, withdrawal of her Anders brief, and permission to proceed on the basis of his own supplemental brief."  USA v. Acevedo-Muniz et al., Crim. Action No. 99-0307 (PG) (DPR), Docket Entry No. 349, at 1.  Petitioner's aforesaid appellate proceedings before the First Circuit were instituted in May, 2009, that is, a year prior to Petitioner's filing of his Petition in Muniz-I, and his lengthy pro se appellate brief was filed in April 2010, that is, one month prior to Muniz-I.

[13]  Moreover, such odd construction of the exhaustion requirement would operate as an undue invitation for inmates to misrepresent their ability to speak, read, write or understand English in order to avoid the reach of the requirement.

12. Since Petitioner's Motion-II does not provide this Court
    with a valid basis to reconsider this Court's prior
    determination, Petitioner's newly-minted GCT challenges will
    remain dismissed, without prejudice, as unexhausted.  No
    statement made in this Memorandum Opinion and Order shall be
    construed as expressing this Court's position as to
    substantive validity or invalidity of Petitioner's newly-
    minted GCT challenges.[14]

    IT IS, therefore, on this  30th  day of  September , 2011,

    ORDERED that the Clerk shall reopen both Muniz v.

Zickefoose, Civ. Action. No. 10-2444, and Muniz v. Zickefoose,

Civ. Action. No. 11-4200, for the Court's examination of

Petitioner's motion for reconsideration (docketed in Muniz v.

Zickefoose, Civ. Action. No. 10-2444, as Docket Entry No. 18, and

repeated in the same action, again, as Docket Entry No. 20, and

also docketed in Muniz v. Zickefoose, Civ. Action. No. 11-4200,

---

    [14] The Court takes this opportunity to note Petitioner's
misunderstanding of the leeway allowed to pro se submissions.
Here, Petitioner's Motion-II unambiguously indicates Petitioner's
impression that a pro se submission stating no valid position
must, nonetheless, be so "twisted" by the judiciary as to amount
to a viable claim.  Petitioner errs.  While it is true that pro
se submissions are not expected to follow the official format and
are construed with a measure of tolerance, it is the litigant's
obligation to state a viable position.  Moreover, "[h]abeas
corpus petitions must meet heightened pleading requirements."
McFarland v. Scott, 512 U.S. 849, 856 (1994). Habeas Rule 2(c)
requires a habeas petition to "specify all the grounds for relief
available to the petitioner," "state the facts supporting each
ground" and "state the [correct] relief requested."  28 U.S.C. §
2254 Rule 2(c), applicable to § 2241 petitions through Rule 1(b).

as Docket Entry No. 8) by making a new and separate entry on the docket of each of these matters; both such entries should read, "CIVIL CASE REOPENED"; and it is further

ORDERED that Petitioner's motion for reconsideration is granted in form and denied in substance, and this Court's prior determination as to Petitioner's newly-minted line of challenges (associated with calculation of his good-conduct-time credits) shall remain in force, and this newly-minted line of challenges shall remain dismissed without prejudice, as unexhausted; and it is further

ORDERED that the Clerk shall docket these Memorandum Opinion and Order in both Muniz v. Zickefoose, Civ. Action. No. 10-2444, and Muniz v. Zickefoose, Civ. Action. No. 11-4200; and it is further

ORDERED that the Clerk shall close both Muniz v. Zickefoose, Civ. Action. No. 10-2444, and Muniz v. Zickefoose, Civ. Action. No. 11-4200, by making a separate entry on the docket of each of these matters; both such entries should read, "CIVIL CASE CLOSED"; and it is further

ORDERED that this Court withdraws its jurisdiction over both Muniz v. Zickefoose, Civ. Action. No. 10-2444, and Muniz v. Zickefoose, Civ. Action. No. 11-4200; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner by regular U.S. mail and upon

21

Respondent by means of electronic delivery; and it is finally

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon the Clerk of the Court for the United States Court of Appeals for the Third Circuit, accompanying such service with a notation reading, "SERVED IN CONNECTION WITH MUNIZ V. ZICKEFOOSE, USCA NUMBER 11-3110.  SERVICE EXECUTED FOR INFORMATIONAL PURPOSES ONLY."


s/Robert B. Kugler
**Robert B. Kugler,**
**United States District Judge**